**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Christine M. Arguello**

Civil Action No. 18-cv-01991-CMA-SKC

CHRISTIAN GARCIA AMARO,

      Applicant,

v.

DEAN WILLIAMS[1],
PHIL WEISER[2], and
MIKE ROMERO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

      Applicant Christian Garcia Amaro has filed, through counsel, an Application for a

Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody

(Doc. # 1) ("the Application"). He challenges the validity of his criminal conviction in

Pueblo County District Court Case No. 04CR880. Having considered the Application,

Respondents' Answer (Doc. # 17) and the state court record[3], the Court denies the

Application.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), a public officer's successor is automatically substituted as a party. Thus, Dean Williams is substituted for Rick Raemisch as the Executive Director for the Colorado Department of Corrections.
[2] Phil Weiser is automatically substituted as a party to this case for Cynthia A. Coffman as the Attorney General of the State of Colorado. Fed. R. Civ. P. 25(d).
[3] The Court notes that Applicant was afforded an opportunity to file a reply to Respondents' Answer, but did not do so.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Mr. Garcia Amaro of first degree felony murder for his alleged involvement in an attempted robbery resulting in the death of Thomas Urlacher.  (Doc. # 7-1 at 2-3.)  The trial court sentenced him to a mandatory prison term of life without the possibility of parole.  (*Id.*)  Mr. Garcia Amaro appealed the judgment of conviction.  In *People v. Garcia-Amaro,* No. 05CA2506 (Colo. App. Mar. 20, 2008) ("*Garcia-Amaro I*"), the Colorado Court of Appeals affirmed the conviction and sentence.  (Doc. # 7-9.)  The Colorado Supreme Court denied his petition for writ of certiorari.  (Doc. # 7-1 at 2.)

Mr. Garcia Amaro then filed *pro se* a motion for postconviction relief under Colo. Crim. P. Rule 35(c).  (Doc. # 7-1 at 2-3.)  The district court denied the motion without a hearing.  (*Id.*)  In *People v. Garcia-Amaro,* No. 10CA0982 (Colo. App. Mar. 22, 2012) ("*Garcia-Amaro II*"), the Colorado Court of Appeals affirmed in part, reversed in part, and remanded for additional proceedings.  (Doc. # 7-6.)  Specifically, the Colorado Court of Appeals remanded the case back to the district court with directions to hold an evidentiary hearing on several of the ineffective assistance of counsel claims raised in the Rule 35(c) motion.  (*Id.* at 10-14.)  Following the hearing, the district court denied the motion, and Mr. Garcia Amaro appealed.  (Doc. # 7-1 at 3.)  In *People v. Garcia-Amaro,* No. 15CA1694 (Colo. App. Aug. 17, 2017) ("*Garcia-Amaro III*")*,* the Colorado Court of Appeals affirmed the decision.  (Doc. # 7-1.)  The Colorado Supreme Court denied his petition for writ of certiorari.  (Doc. # 7-2.)

In the Application filed pursuant to 28 U.S.C. § 2254 on August 6, 2018, Mr. Garcia Amaro asserts that (1) an unconstitutional complicity instruction was given to the jury; and (2) defense counsel was constitutionally ineffective by failing (a) to properly advise him regarding plea offers; (b) to properly investigate and cross-examine a witness's drug use and criminal history; (c) to sequester a potential witness; and (d) to request an accessory after the fact instruction. (Doc. # 1 at 5-10, 15-35.)

Respondents conceded in the Pre-Answer Response (Doc. # 7) that the Application is timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d), and that Mr. Garcia Amaro exhausted state court remedies for the asserted claims. (*Id.* at 4-9.)

On September 17, 2018, the Court directed Respondents to file an Answer that fully addressed the merits of the claims asserted in the Application. (Doc. # 8.) Respondents submitted their Answer (Doc. # 17) on January 11, 2019. Mr. Garcia Amaro did not file a reply.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
>      unreasonable application of, clearly established Federal law, as
>      determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id*. at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 98. In other words, this Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an

unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The federal habeas court applies a *de novo* standard of review to constitutional claims that were not reviewed on the merits by the state courts. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

### III.  ANALYSIS OF CLAIMS

#### A. CLAIM ONE: COMPLICITY INSTRUCTION

Mr. Garcia Amaro first contends that the "complicity instruction invited the jury to convict [him] of felony-murder without ever finding that he was guilty of having committed the named predicate felonies of robbery or attempted robbery." (Doc. # 1 at 15.)  He asserts that this error violated his due process rights to be found guilty beyond a reasonable doubt for every element of the charged offense.  (*Id.*)

The Due Process Clause requires the prosecution to prove every element of a charged offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).  To demonstrate a constitutional error from a jury instruction in a state criminal trial, a habeas petitioner must show (1) an "ambiguity, inconsistency, or deficiency" in the instruction, and, (2) a "reasonable likelihood" that the jury applied the instruction in a

way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal quotation marks and citations omitted). *See also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (explaining that the constitutional inquiry is "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."). However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

In making this determination, the jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). A "slight possibility" that the jury misapplied the jury instruction is not enough. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000). "[A]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive a petitioner of a fair trial and . . . due process of law." *Patton v. Mullin*, 425 F.3d 788, 807 (10th Cir. 2005) (quotation omitted); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (holding that in considering a habeas claim based on an improper jury instruction, the court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable [or] erroneous") (quotations omitted)). In short, the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).  As such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997).

**1.  State court proceedings**

The trial court provided the jury with the following relevant instructions.

### Instruction No. 13

The elements of the crime of Murder in the First Degree-Felony Murder are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged

3. acting with one or more persons,

4. committed or attempted to commit robbery and

5. in the course of or in furtherance of committing or attempting to commit robbery, or in the immediate flight therefrom,

6. the death of a person, other than one of the participants, was caused by anyone.

. . . .

### Instruction No. 14

The elements of the crime of Robbery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. took anything of value,

5. from the person or presence of another,

6. by use of force, threats, or intimidation.

**Instruction No. 15**

The elements of the crime of Criminal Attempt to commit Robbery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. engaged in conduct constituting a substantial step toward the commission of Robbery.

. . . .

**Instruction No. 16**

The elements of the crime of Murder in the Second Degree are:

1. That the defendant

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. caused the death of another person.

. . . .

**Instruction No. 17**

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed,

2. Another person must have committed all or part of the crime,

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime,

4. The defendant must have had the intent to promote or facilitate the commission of the crime, and

5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

(State Court R., Court File at 196-200.)

Moreover, the jury was first instructed that "[n]o single rule describes all the law which must be applied. Therefore, the rules must be considered together as a whole." (*Id*. at 183.)

On direct appeal, the Colorado Court of Appeals addressed the claim as follows:

## II. Complicity Jury Instruction

Garcia-Amaro contends the trial court erred when it provided the jury with a complicity instruction which permitted the jury to convict him of felony murder without finding him guilty of committing the predicate felonies of either robbery or attempted robbery. We are not persuaded.

. . . .

Garcia-Amaro argues that the complicity instruction's reference to "any" crime failed to limit the jury's consideration of complicity liability to the crimes charged or the predicate felonies for felony murder on which the jury was instructed, robbery and attempted robbery. To support his argument, Garcia-Amaro contends that ample evidence was presented of other uncharged crimes, which may have led the jury to find complicity liability based upon one of those crimes, rather than robbery or attempted robbery.

The trial court has a duty "to properly instruct the jury on all matters of law." *Key v. People*, 715 P.2d 319, 323 (Colo. 1986). To determine

whether a particular jury instruction is proper, we review the jury instructions as a whole. *People v. Asberry*, 172 P.3d 927, 933 (Colo. App. 2007). "There is no reversible error if the jury instructions, read as a whole, adequately inform the jury of the law." *Id*.

Here, Garcia-Amaro focuses on the complicity liability instruction, which stated:

> A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
>
> 1. A crime must have been committed,
>
> 2. Another person must have committed all or part of the crime,
>
> 3. The defendant must have had knowledge that the other person intended to commit all or part of the crime,
>
> 4. The defendant must have had the intent to promote or facilitate the commission of the crime, and
>
> 5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

Additionally, the jury instructions contained elemental instructions for first degree felony murder, second degree murder, robbery, and attempted robbery.

During the People's closing argument, the prosecutor did not discuss any other crimes for which Garcia-Amaro may have been criminally liable. The prosecutor's discussion of complicity liability was limited to a reference that, if the jurors did not believe Garcia-Amaro was one of the gunmen and they believed he was the getaway driver instead, then they should convict Garcia-Amaro under complicity liability. Similarly, Garcia-Amaro did not suggest he might have been liable for other crimes, rather than robbery or attempted robbery.

Absent a contrary showing, it is presumed that the jury understood the jury instructions. *People v. Wilford*, 111 P.3d 512, 516 (Colo. App. 2004). Garcia-Amaro did not establish that the jury did not understand the jury instructions. Furthermore, having reviewed the jury instructions as a whole, we conclude the complicity liability instruction, as well as the other instructions, accurately and adequately informed the jury of the law. Consequently, the trial court did not err.

(Doc. # 7-9 at 3-6.)

### 2. Application of AEDPA standard of review

The Colorado Court of Appeals denied relief on the claim that the complicity instruction violated Mr. Garcia Amaro's federal due process right to have the prosecution prove every element of the offense beyond a reasonable doubt because it permitted the jury to find complicity without affirmatively identifying what predicate "crime" had been committed. Because the Colorado Court of Appeals determined there was no error in the jury instructions, the deferential AEDPA standard of review applies.

Mr. Garcia Amaro fails to demonstrate he is entitled to relief under the "contrary to" component of § 2254(d)(1). He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Garcia Amaro also does not show that the Colorado Court of Appeals unreasonably applied a clearly established rule of federal law under § 2254(d)(1), or that its decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court under § 2254(d)(2). The state appellate court's conclusion that "the complicity liability instruction, as well as the other instructions, accurately and adequately informed the jury of the law," is a determination of state law

that is binding on this federal habeas court. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (recognizing that "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The Court does not perceive any constitutional error in this ruling. Consequently, the complicity instruction, which comported with Colorado law, lacked the requisite "ambiguity, inconsistency, or deficiency." *See Waddington*, 555 U.S. at 190-91.

The Colorado Court of Appeals also determined that the jury understood that the complicity instruction was limited to the predicate crimes of robbery and attempted robbery when viewed in the context of the jury instructions as a whole and the evidence presented at trial. The state court's factual findings are presumed correct and are supported by the state court record. The jury was instructed, in sequence, on the elements of felony murder (Instruction No. 13), robbery (Instruction No. 14), attempted robbery (Instruction No. 15), second degree murder (Instruction No. 16), and complicity (Instruction No. 17). *See* (State Court R., Court File at 196-200.) The jury received no instructions regarding other crimes. (*Id.*)

Further, neither the State nor the defense argued that Mr. Garcia Amaro was guilty of any crime, other than robbery or attempted robbery. *See generally* (State Court R., 8/24/05 – 8/26/05 Trial Tr. and 8/30/05 – 9/2/05 Trial Tr.) For example, in closing argument, the prosecution stated "one of the things we need to prove is that a robbery or attempted robbery was being committed when Tom Urlacher was killed." (9/2/05 Trial Tr. at 31.) Similarly, the prosecution's discussion of complicity liability was limited

to a reference that, if the jurors did not believe that Mr. Garcia-Amaro fired any gun which killed the victim but believed he was the getaway driver, then they should convict Mr. Garcia Amaro as a complicitor. (*Id.* at 43-44.)

Mr. Garcia Amaro contends there "was ample prosecution evidence at trial of 'crimes' other than those listed as the predicate felonies in the felony-murder instruction, including crimes such as: conspiracy to commit robbery, attempted theft, conspiracy to commit theft, criminal mischief, and attempted distribution of marijuana," but does not cite to any evidence in the record supporting this argument. (Doc. # 1 at 16.) Having reviewed the state court record, this Court has not found "ample prosecution evidence" of "other crimes" that the jury may have reasonably relied on to convict Mr. Garcia Amaro of felony murder. Mr. Garcia Amaro has not overcome the presumption of correctness afforded the state court's finding that the jury understood the complicity instruction as requiring proof of the charged predicate crimes of robbery or attempted robbery. Moreover, the Court agrees with the state court's determination that when the instructions are read together and considered in the context of the evidence presented at trial, they informed the jury of each element of the charged offenses, as well as the elements necessary to convict Mr. Garcia Amaro of felony murder. There was no reasonable likelihood that the jury applied the complicity instruction in a way that lessened the prosecution's burden of proof, or otherwise violated the Constitution. As noted above, the pattern complicity instruction complied with state law and required the jury to find that Mr. Garcia committed a predicate crime, *i.e.,* robbery or attempted robbery, beyond a reasonable doubt to convict him as a complicitor.

Mr. Garcia Amaro has not provided any facts demonstrating that the jury misunderstood or disregarded the complicity instruction at the time it rendered its verdict. He relies on one Supreme Court case, *Bollenbach v. United States,* 326 U.S. 607 (1946), to support his argument that the jury did not understand the instructions. *Id.* at 612-13 (holding that "when a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."). Specifically, Mr. Garcia Amaro contends that the trial court's response was insufficient when the jury asked for clarification regarding the difference between felony murder and second-degree murder. (Doc. # 1 at 17.) The Court cannot find that the state court's resolution of this issue was contrary to, or an unreasonable application of *Bollenbach*. Indeed, the jury never expressed any confusion regarding the challenged complicity instruction, and Mr. Garcia Amaro does not explain how any initial confusion concerning the difference between felony murder and second-degree murder demonstrates confusion as to the complicity instruction. In short, the Court finds that the state appellate court's resolution of the claim was consistent with controlling federal law.

Accordingly, Mr. Garcia Amaro is not entitled to federal habeas relief on claim one.

### B. CLAIM TWO: INEFFECTIVE ASSISTANCE OF COUNSEL

Claim Two is based on the alleged ineffective assistance of trial counsel. Mr. Garcia Amaro specifically challenges counsel's failure (a) to properly advise him regarding a plea offer; (b) to properly investigate and cross-examine a witness's drug use and criminal history; (c) to sequester a potential witness; and (d) to request an

accessory after the fact instruction.

The Sixth Amendment generally requires that defense counsel's assistance to the criminal defendant be effective. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and, (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Id.*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In other words, there is a rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The federal habeas court's review of the state appellate court's disposition of an ineffective assistance claim under the AEDPA is "doubly deferential." *Cullen,* 563 U.S. at 190. The court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the

attorney's decision in how to best represent a client." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (internal quotation marks and citations omitted).

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 693.

### 1. Claim 2(a)

Mr. Garcia Amaro contends that his counsel was ineffective in failing to properly advise him regarding the plea offers made by the prosecution. (Doc. # 1 at 5-6, 20-33.) Specifically, he asserts that his attorney "did not explain how the sentences to the DOC would work, that they would be reduced by earned time and good time (and how much that would be approximately) and when or if he would be parole eligible." (*Id.* at 5.) He further states that the omission of this information prevented him from even considering the first three plea offers—48 years for second degree murder, 32 years for second degree murder, and 16-32 years for second degree murder. (*Id.*) Mr. Garcia Amaro also argues that he rejected the fourth plea offer, 16 years for conspiracy to commit murder, because although his counsel had explained what felony murder meant, his attorney did not "explain which crimes were the possible predicate felonies" and that conspiracy to commit robbery was not a predicate offense for felony murder. (*Id.* at 5-6.) He contends that by not advising him of these facts, his counsel caused him to reject the fourth plea offer and proceed to trial.

### a. State court proceedings

In postconviction proceedings, the state court held an evidentiary hearing, which included testimony from Mr. Garcia Amaro, one of his trial attorneys, and an expert witness who described the appropriate standard of care for defense attorneys.  *See generally* (State Court R., 4/17/15 Trial Tr.)  In a written order rejecting the claim that Mr. Garcia Amaro received ineffective assistance of counsel during plea negotiations, the state district court concluded:

> After hearing the testimony of the Defendant and of Mr. Emmons [Applicant's trial counsel] at the evidentiary hearing, the Court concludes the Defendant's claim that Mr. Emmons failed to inform him of the ramifications of the multiple plea offers is without merit. Mr. Emmons testified that he conveyed all of the plea offers to the Defendant. Mr. Emmons was frustrated that the Defendant either refused to accept the realities of the evidence against him or simply could not understand what he was being told. Either way, the Defendant rejected all offers and was convicted at trial. The Defendant's version is suspect given the fact he lost the trial and is currently serving a lengthy Department of Corrections sentence . . . . [B]oth Mr. Emmons and Mr. McCray [co-counsel at trial] are well experienced and competent criminal defense attorneys. The Court has difficulty believing that they would not have fully advised the Defendant about how much time he could be expected to serve given the number of different plea offers made and the numerous contacts they had with the Defendant prior to and during the trial. The Defendant's claim that he did not understand that accepting any of the plea agreements would eliminate a felony murder sentence is not believable.

> On the contrary, Mr. Emmons testified to his numerous attempts to persuade the Defendant to accept the plea offers that continually got better for the Defendant until shortly before trial. Mr. Emmons testified that Mr. McCray also tried to talk to the Defendant. He thought that his investigator also may have talked to the Defendant. In addition, Mr. Emmons talked to the Defendant's family.

> While Mr. Emmons could not specifically remember the details of his discussions with the Defendant about how much time he would spend incarcerated when good time, earned time and parole eligibility were

considered, he did say his practice was to have those discussions with his clients. In summary, the Court finds Mr. Emmons to be far more credible than the Defendant regarding what actually occurred during conferences concerning plea negotiations.

(State Court R., Court File at 565-66.)

The Colorado Court of Appeals affirmed the district court's decision as follows:

The Sixth Amendment guarantees every criminal defendant the right to effective assistance of counsel. U.S. Const. amends. VI, XIV; *see* Colo. Const. art. II, § 16; *People v. Corson*, 2016 CO 33, ¶ 25. This right extends not only to the trial itself, but also to any pretrial plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Corson*, ¶ 32. When a defendant has alleged that his trial counsel was ineffective, he must show that counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and that this deficient performance prejudiced him, meaning that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' where a reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Corson*, ¶ 34 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). To prove prejudice where the defendant has rejected a plea deal, he must show that

but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164.

A district court's denial of a postconviction motion presents a mixed question of law and fact. *People v. Sifuentes*, 2017 COA 48M, ¶ 16. Therefore, we defer to the district court's factual findings and review its legal conclusions de novo. *Id*.

A. Plea Negotiations

The prosecution made several plea offers to defendant. The most favorable one, made toward the end of negotiations, asked defendant to plead guilty to conspiracy to commit robbery in exchange for a sixteen-

year term in the custody of the DOC and dismissal of the remaining charges. Defendant rejected this offer.

At a postconviction hearing, defendant's trial counsel testified that he did not remember the exact conversations he had with defendant about the plea offers, but that it was his normal practice to explain how sentencing, good time credits, and parole eligibility work. Especially here, where he felt that their chances at trial were not good and he very much wanted defendant to take the plea, he testified that he would have explained all the benefits of accepting the deal rather than going to trial. He remembered being frustrated that defendant would not accept this deal and even spoke with defendant's parents about it because he felt that defendant did not understand the gravity of his situation. Trial counsel also stated that not only did he speak with defendant about this deal, but his co-counsel did too, and he believed the defense investigator may have as well.

Defendant testified that trial counsel did not explain to him that he would be eligible for parole consideration after serving only fifty percent of his sentence; how parole eligibility worked generally; or that if he accepted the deal, the prosecution would not still be able to try him for felony murder. He said that, had he known this information, he would have accepted the deal.

In its written order, the district court found that defendant's testimony was not believable. The court also noted trial counsel's extensive professional experience and ultimately found counsel's testimony and recollection of plea negotiations to be more believable. We perceive no abuse of discretion in the court's findings or error in its application of the law. *See People v. Clark*, 2015 COA 44, ¶ 175 ("It is the function of the [trier of fact], and not the reviewing court, to weigh evidence and determine the credibility of the witnesses." (quoting *People v. Pitts*, 13 P.3d 1218, 1221 (Colo. 2000))) (alteration in original).

(Doc. # 7-1 at 3-6.)

### b. Application of AEDPA standard of review

The Colorado Court of Appeals determined that Mr. Garcia Amaro was not

denied effective assistance due to his counsel's purported failure to explain how good

time and earned time would affect his sentence, and that pleading guilty to conspiracy

22

to commit robbery would not expose him to felony murder liability.  The state court's ruling is subject to the familiar statutory deferential standards in § 2254(d).

Mr. Garcia Amaro fails to demonstrate that he is entitled to relief under the "contrary to" component of § 2254(d)(1).  The Colorado Court of Appeals identified the correct legal standard by applying *Strickland v. Washington*, 466 U.S. 668 (1984) and *Lafler v. Cooper*, 566 U.S. 156 (2012).  Mr. Garcia Amaro does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result.  *See House*, 527 F.3d at 1018.

Mr. Garcia Amaro also fails to demonstrate that the state court decision was an unreasonable application of clearly established federal law under § 2254(d)(1), or an unreasonable determination of the facts under § 2254(d)(2).  The Colorado Court of Appeals relied on the postconviction court's conclusion that defense counsel was credible and that Mr. Garcia Amaro's testimony was not credible at the evidentiary hearing in believing that it was the defense attorney's "normal practice to explain how sentencing, good time credits, and parole eligibility work," and that he "very much wanted defendant to take the plea . . . [and] would have explained all the benefits of accepting the deal rather than going to trial."  (Doc. # 7-1 at 3-6.)

As noted above, the Court must presume that the state court's factual determinations are correct, and Mr. Garcia Amaro bears the burden of rebutting the presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1)*; Rice v. Collins*, 546 U.S. 333, 338–39 (2006) (treating a credibility determination as a factual

determination in the habeas context). Further, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Garcia Amaro. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). The relevant question under § 2254(d)(2) is whether the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.

Colorado law establishes that when a postconviction court presides over an evidentiary hearing, that court is the trier of fact and bears the responsibility of determining the weight and credibility given to witness testimony. *See Dunlap v. People*, 173 P.3d 1054, 1061-62 (Colo. 2007). A Colorado appellate court then defers to those findings. *See People v. Brown*, 250 P.3d 679, 680-81 (Colo. App. 2010). Here, the Colorado Court of Appeals correctly followed state law and regardless, this Court must defer to the state appellate court's application of state law, including its credibility determinations. *See Rice v. Collins,* 546 U.S. 333, 338-39 (2006); *Boyd*, 179 F.3d at 912 (10th Cir. 1999). Further, on habeas review, "given the strong presumption of reasonable professional assistance and the accompanying evidentiary burden imposed on [a habeas applicant]" it is the applicant who "must bear the brunt of" a trial attorney's "faulty memory" or "ambiguous testimony." *Sallahdin v. Mullin*, 380 F.3d 1242, 1251 (10th Cir. 2004).

The Court has reviewed the transcript from the evidentiary hearing in Mr. Garcia Amaro's postconviction proceedings. *See* (State Court R., 4/17/15 Trial Tr.) Conflicting testimony between Mr. Garcia Amaro and his counsel does not demonstrate that the state appellate court's denial of this claim was based on an unreasonable determination

of the facts in light of the evidence presented. Considering the presumptively correct credibility determination that defense counsel was credible and Mr. Garcia Amaro's testimony was not believable, as well as the findings that Mr. Garcia Amaro's attorney generally informed his clients "of how sentencing, good time credits, and parole eligibility work," and wanted Mr. Garcia Amaro to take the plea offer of 16 years for conspiracy to commit robbery, this Court finds that it was not unreasonable for the Colorado Court of Appeals to conclude that the ineffective assistance claim lacked merit.

As such, Mr. Garcia Amaro fails to present clear and convincing evidence that would overcome the finding that counsel accurately advised him during plea negotiations. Ultimately, Mr. Garcia Amaro has not shown that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

Mr. Garcia Amaro, therefore, is not entitled to federal habeas relief with respect to claim 2(a).

### 2. Claim 2(b)

Mr. Garcia Amaro next maintains that trial counsel was ineffective in failing to properly investigate and cross-examine a witness's drug use and criminal history. (Doc. # 1 at 7-8.) He asserts that counsel's failure to pursue this line of questioning, which contradicted the prosecution's theory of the case that there was no drug deal, fell below the *Strickland* standard of care and prejudiced him. (*Id*.)

### a. State court proceedings

After the evidentiary hearing, the state district court rejected this claim as follows:

> The Defendant asserts that counsel should have presented the theory that he merely intended to sell drugs. He suggests this could have been done by using criminal records and testimony of a neighbor that drugs were being sold out of E.M.'s house, where the murder occurred.

> In addition to Mr. Emmons, the Defendant was also represented by Mr. Larry McCray. Both Mr. Emmons and Mr. McCray have been long time defense attorneys in Pueblo. The Court is familiar with both because they have practiced before the Court for many years. There was also an investigator assisting Mr. Emmons and Mr. McCray with obtaining information pertinent to the case.

> The Court understands that at trial the theory of defense was general denial. . . . The Court finds this was a strategic choice given the facts of the case.

> The Court further finds that it is mere speculation that testimony of a neighbor that drugs were sold out of E.M.'s house would even be admitted at trial. Furthermore, the Defendant has failed to establish that such testimony would have resulted in a different outcome. Similarly, the fact that E.M. had prior felony convictions could only be used to impeach his credibility and would not establish a drug deal gone bad. At the evidentiary hearing, the Defendant admitted that he did not tell Mr. Emmons that he had actually participated in drug transactions with E.M. Had Mr. Emmons known that he may have proceeded differently. Therefore, the Court concludes that Mr. Emmons conduct in pursuing a general denial theory of defense was not deficient.

State Court R., Court File at 562-63.

The Colorado Court of Appeals affirmed the decision as follows:

> Defendant contends that trial counsel failed to adequately present the theory of defense that the victim's death was the result of a drug deal gone bad, not a planned robbery. To this end, he asserts that counsel should have impeached E.M., a prosecution witness, with his prior felony convictions and that counsel failed to adequately examine R.G., E.M.'s neighbor, about her observations of E.M. selling drugs from his house

. . . .

At the postconviction hearing, trial counsel testified that the theory of defense at trial was one of general denial. Thus, evidence supporting a conclusion that the underlying incident was a drug deal was irrelevant because their theory was that defendant was not involved in the shooting in any way. Accordingly, even assuming such evidence would have been admissible, E.M.'s criminal history and R.G.'s testimony would not have supported a general denial theory of defense. And defendant's argument that contact between himself, codefendant, and the victim was for the purpose of a drug deal is not inconsistent with the prosecution's theory that the shooting of the victim, allegedly the point where the deal went bad, was a result of attempting to rob the victim.

Deciding which theory of defense to pursue is a strategic decision. *See People v. Ray*, 2015 COA 92, ¶¶ 43-47; *People v. Gandiaga*, 70 P.3d 523, 528 (Colo. App. 2002); *see also People v. Bergerud*, 223 P.3d 686, 704-05 (Colo. 2010). And here, we agree with the district court that this strategic choice did not amount to deficient performance. *See Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003) ("Because a challenged action might be considered sound trial strategy under the circumstances of a particular case, judicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

(Doc. # 7-1, at 6-8.)

### b. Application of AEDPA standard of review

To obtain habeas corpus relief, Mr. Garcia Amaro must establish that the state appellate court's factual findings and denial of the ineffective assistance claim under *Strickland* were objectively unreasonable.

Mr. Garcia Amaro has not cited any contradictory Supreme Court case that governs his claim, and thus, fails to demonstrate that the state appellate court's ruling is "contrary to" any controlling federal law under § 2254(d)(1).

Mr. Garcia Amaro also fails to demonstrate that the state appellate court's conclusion—that defense counsel's performance was not deficient given his strategic decision to purse a defense theory of general denial instead of arguing that the victim's death was the result of a drug deal gone bad and not an attempted robbery—involved an unreasonable determination of the facts under § 2254(d)(2), or was an unreasonable application of *Strickland* under § 2254(d)(1).

First, the Colorado Court of Appeals explained that under Colorado law the witness's criminal history would only be admissible to impeach his testimony, and not to establish that drugs were being sold at the house. This admissibility determination under state law is binding on this Court. *See e.g., Chapman v. LeMaster,* 302 F.3d 1189, 1196 (10th Cir. 2002) (stating that in habeas review, the state court's interpretation of a state statute is binding). The Colorado Court of Appeals also concluded that the witness's drug activities would have had no evidentiary value to Mr. Garcia Amaro's defense because it did not support, and was inconsistent with, the defense theory of denying he was present during the shooting. (Doc. # 7-1 at 7.)

This Court cannot conclude that the state appellate court's decision regarding counsel's performance with respect to the cross examination of the witness was objectively unreasonable. *See Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.")*; Cannon v. Mullin*, 383 F.3d 1152, 1163 (10th Cir. 2004) ("Decisions on how to question a witness are generally committed to counsel's discretion"). *See e.g., DeLozier v. Sirmons*, 531 F.3d 1306, 1324 (10th Cir. 2008) (finding that counsel

was not deficient in deciding not to call a particular witness whose testimony would only be available as impeachment and would have been ambiguous). Indeed, review under § 2254 is "doubly deferential" because the federal habeas court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how to best represent a client." *Knowles v. Mirzayance,* 556 U.S. 111 (2009); *Crawley v. Dinwiddie,* 584 F.3d 916, 922 (10th Cir. 2009).

The record reflects that defense counsel presented a theory of general denial at trial. *See e.g.,* (State Court R., 9/2/05 Trial Tr. at 49-81.) Mr. Garcia Amaro fails to demonstrate that counsel's strategic decision not to pursue the issue of drug use at the house to avoid opening the door to testimony that potentially could harm this defense theory was objectively unreasonable. The Court cannot find that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law" in finding that defense counsel's decisions did not fall below an objective standard of reasonableness required by *Strickland. See Maynard*, 468 F.3d at 671.

Accordingly, Mr. Garcia Amaro is not entitled to federal habeas relief for claim 2(b).

### 3. Claim 2(c)

Mr. Garcia Amaro next asserts that trial counsel was ineffective in failing to sequester a potential witness, A.B., the girlfriend of Mr. Pagan, a co-defendant. (Doc. # 1 at 8-9.) He contends that counsel should have requested the sequestration of A.B. because "midway through the trial" it was discovered that she had "key evidence." (*Id.*

at 8.)  He further asserts that because his attorney failed to sequester A.B., she could not be called as a witness to impeach A.E.'s testimony that Mr. Garcia Amaro and Mr. Pagan were together in the same room on the night of the shooting.  (*Id.* at 8-9.)

### a. State court proceedings

The state courts noted that A.B. sat through much of the trial and was not considered a witness.  On the sixth day of trial, evidence was presented showing a phone call from Mr. Pagan's phone to Mr. Garcia Amaro's phone at 4:23 a.m. on the morning after the victim was killed.  (State Court R., 8/31/05 Trial Tr. at 94-95, 137-38, 150.)  This phone call supported the reasonable inference that Mr. Garcia Amaro and Mr. Pagan were not physically in the same place at that time.  (*Id.* at 149-153.)  Defense counsel relied on this evidence to impeach A.E.'s testimony in which she stated that Mr. Garcia Amaro and Mr. Pagan were both together at her house around 4:00 a.m.  (*Id.* at 83-84, 150-152); *see also* (8/26/05 Trial Tr. at 44-46.)  A.E. also testified that she told a detective she believed A.B. had Mr. Pagan's phone, to which A.B. shook her head and told defense counsel that this assertion was untrue.  (8/31/05 Trial Tr. at 154-55.)  Mr. Garcia Amaro's attorney wanted to call A.B. as an impeachment witness, but the trial court refused to allow her to testify before the jury because she had not been sequestered.  (*Id.* at 155-166.)  Mr. Garcia Amaro contends that counsel's failure to sequester this potential witness was constitutionally deficient performance and prejudiced him.

The postconviction court addressed the claim as follows:

> The Defendant asserts counsel was ineffective by failing to

investigate A.B. and in failing to call her as a witness.  Counsel did call A.B.  Her testimony was placed on the record outside the presence of the jury.  However, she was not allowed to testify before the jury by the trial judge because a sequestration order was in effect and A.B. had been in the courtroom.

This Court did not try the case.  This Court does not have a copy of the trial transcript and it was not made available at the evidentiary hearing.  Therefore, the Court must rely upon the written argument of counsel provided to the Court following the evidentiary hearing.  The Court agrees with Defendant that A.B.'s testimony would be relevant to rebut the testimony of A.E.  However, Mr. Whitmire [the prosecutor], in his written argument to the Court, cites the trial transcript for the proposition that A.E. admitted she had made up her initial story, and made a false statement to the police because she was afraid of Mr. Pagan.  Assuming that A.E. made that admission at trial, it is doubtful A.B.'s testimony could have impeached A.E. any further.  Therefore, the Court finds the failure to investigate A.E. does not establish Mr. Emmons' performance was deficient.  It also does not establish the Defendant was prejudiced by any failure to investigate A.B.

(State Court R., Court File at 564.)

Applying the *Strickland* standard, the Colorado Court of Appeals rejected the claim on the following grounds:

Defendant contends that trial counsel was deficient for failing to sequester A.B. so that she would be available to testify at the trial.

The district court found that A.B.'s testimony would likely have been helpful to rebut the testimony of A.E. However, as the court also found, the trial transcript revealed that A.E. admitted that she had made up her initial story and that she had made a false statement to police. And A.B. was the codefendant's girlfriend and, as a friend of defendant, was attending his trial to support him. Thus, additional evidence from A.B. was unlikely to further discredit A.E. Accordingly, we agree with the district court that defendant has failed to prove that he suffered prejudice resulting from counsel's alleged error.

(Doc. # 7-1 at 10.)

31

## b. Application of AEDPA standard of review

On federal habeas review, Mr. Garcia Amaro must demonstrate the state appellate court's conclusion that he did not suffer any prejudice from counsel's failure to seek exclusion of A.B., was an unreasonable determination of the facts under § 2254(d)(2), or an unreasonable application of relevant federal law under § 2254(d)(1).

Again, Mr. Garcia Amaro does not contest that the Colorado Court of Appeals identified the correct governing principle, i.e*., Strickland*.  Rather, he argues that the Colorado Court of Appeals unreasonably applied clearly established federal law and its decision was based on an unreasonable determination of the facts.

The Colorado Court of Appeals found that A.E. already had admitted she made up her initial story and made a false statement to police.  Thus, the Colorado Court of Appeals reasoned that any additional evidence that may have further discredited A.E.'s story was superfluous, and counsel's failure to sequester A.B. did not prejudice Mr. Garcia Amaro.   Mr. Garcia Amaro does not rebut the presumption of correctness afforded the state court's factual findings, and the trial record demonstrates that A.E. testified that her initial story was false.  *See (*State Court R., 8/26/05 Trial. Tr. at 76-78.) The record also shows that A.E.'s testimony was discredited by both the prosecution and defense throughout Mr. Garcia Amaro's trial.  (*Id.* at 11-133); *see e.g., (*8/31/05 Trial Tr. at 98; 9/1/05 Trial Tr. at 13-19.)  Giving the state appellate court's decision the deference it deserves, the Court has little trouble concluding that the state appellate court's prejudice determination was not an unreasonable application of *Strickland*.

Therefore, the sequestration claim does not merit relief under § 2254(d).

### 4. Claim 2(d)

Mr. Garcia finally contends that trial counsel was ineffective in failing to request

an accessory after the fact instruction.  (Doc. # 1 at 9-10, 33-35.)

### a. State court proceedings

The postconviction court rejected this claim as follows:

> The Court understands that at trial the theory of defense was general denial.  Mr. Emmons testified at the evidentiary hearing that instructing the jury on a lesser offense of accessory after the fact would have sounded too much of being involved as part of a robbery scheme where someone got killed and he did not want to go there.  The Court finds this was a strategic choice given the facts of the case.

(State Court R., Court File at 562.)

Once again relying on *Strickland*, the Colorado Court of Appeals disposed of Mr.

Garcia Amaro's claim on the following grounds:

> As to defendant's contention that trial counsel should have requested an accessory-after-the-fact instruction, we also conclude, as did the district court, this was a matter of trial strategy. *See People v. Newmiller*, 2014 COA 84, ¶ 24. Trial counsel testified that he did not specifically recall whether he considered requesting this instruction. He believed the issue "might have floated through [his] mind," but he would not have requested the instruction as he did not want to place defendant at the scene of the crime and suggest that defendant had any connection to the crime scene. And although the expert testified that he believed it was erroneous not to request this instruction, he also conceded that he could not opine on whether it was a sound strategic decision to not request the accessory-after-the fact instruction when considering all of the facts and circumstances of the case. The district court found that not requesting the instruction was a reasonable strategic decision. We agree and cannot conclude that counsel's conduct fell outside "the wide range of reasonable professional assistance." *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994) (citing Strickland, 466 U.S. at 698).

> Further, defendant has failed to overcome the presumption that the failure to request the instruction could be considered sound trial strategy.

> *See Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002). It was up to the court as the trier of fact to weigh the evidence presented at the hearing. *See People v. Villarreal*, 231 P.3d 29, 34-36 (Colo. App. 2009), aff'd on other grounds, 2012 CO 64. We therefore conclude that the district court did not err by concluding that this strategic choice did not fall below a reasonable standard of care.

(Doc. # 7-1 at 8-9.)

### b. Application of AEDPA standard

Mr. Garcia Amaro fails to demonstrate that he is entitled to relief under § 2254(d)(1) (contrary to or unreasonable application of federal law) or § 2254(d)(2) (unreasonable determination of facts).

As noted by the state courts, trial counsel elected to present a defense of general denial, which was at odds with an accessory-after-the-fact jury instruction because it "would have sounded too much of being involved as part of a robbery scheme where someone got killed" and counsel "did not want to place defendant at the scene of the crime and suggest that defendant had any connection to the crime scene." *See (*Doc. # 7-7 at 3; Doc. # 7-1 at 8.) The state courts, thus, concluded that counsel's decision not to request the instruction was a reasonable strategic choice, which did not amount to deficient performance. (*Id.*)

The Colorado Court of Appeals correctly identified and applied *Strickland* in deciding that Mr. Garcia Amaro did not receive constitutionally deficient assistance of trial counsel. After considering all the circumstances of the case, defense counsel's representation was within the wide range of objectively reasonable representation. *See Bullock,* 297 F.3d at 1036 ("When reviewing an ineffective assistance of counsel claim,

[the court] must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 1052 (quoting *Strickland,* 466 U.S. at 689). In short, Mr. Garcia Amaro has not established that counsel's performance rendered the proceedings fundamentally unfair. The Court, thus, finds that the claim on this ground of ineffective assistance of counsel fails because the state court's decision was not contrary to or an unreasonable application of established federal law, nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Therefore, the claim does not merit relief under § 2254(d).

## IV.  CONCLUSION

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. # 1) filed, through counsel, by Christian Garcia Amaro, is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).

DATED: April 26, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge